IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| Hystad Ceynar Minerals, LLC, on behalf of itself and a class of similarly situated persons,<br><br>           Plaintiff,<br><br>vs.<br><br>Whiting Oil and Gas Corporation,<br><br>           Defendant. | **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS**<br><br>Case No. 1:22-cv-138 |

Before the Court is the Defendant's motion to dismiss and motion to strike class allegations filed on October 17, 2022. See Doc. No. 11. The Plaintiff filed a response in opposition to the motion on November 1, 2022. See Doc. No. 13. The Defendant filed a reply on November 14, 2022. See Doc. No. 15. The Plaintiff filed a motion for leave to file a second amended class action complaint on May 9, 2023. See Doc. No. 17. For the reasons set forth below, the motion to dismiss and motion to strike class allegations are granted and the motion for leave to file a second amended class action complaint is denied.

## I.    BACKGROUND

The Plaintiff, Hystad Ceynar Minerals, LLC, ("Hystad"), is a North Dakota limited liability company. The Defendant, Whiting Oil and Gas Corporation ("Whiting"), is a Delaware corporation. Whiting owns and operates numerous oil and gas wells in North Dakota.

This action is brought on behalf of the Plaintiff and a proposed class of similarly situated persons. Since August 12, 2016, Hystad has owned an interest in oil and gas produced from wells Whiting operates in North Dakota. The first amended complaint alleges Whiting made untimely

1

payments to the Plaintiff and class members without paying 18% interest as required by N.D.C.C. § 47-16-39.1 Hystad defines the proposed class as:

> All non-excluded persons or entities owning mineral interests in North Dakota wells who: (1) received untimely payments from Defendant for proceeds associated with oil and gas production at any time since August 12, 2016; and (2) whose payments did not include the eighteen percent per annum interest as required by N.D.C.C. § 47-16-39.1.
>
> Excluded from the Class are: (1) Defendant, its affiliates, predecessors, employees, officers, and directors; and (2) persons who own mineral interests which are owned or managed by the Board of University and School Lands of the State of North Dakota.

See Doc. No. 1, ¶ 21.

Whiting filed for bankruptcy in April 2020 in the Bankruptcy Court for the Southern District of Texas. See In re Whiting Petroleum Corp., No. 20-32021 (Bankr. S.D. Tex. 2020). The bankruptcy court confirmed its plan in August 2020. In November 2020, Hystad filed an action in the District of North Dakota against Whiting related to Whiting's failure to pay interest on untimely payments. See Hystad Ceynar Minerals, LLC v. Whiting oil and Gas Corp. No. 1:30-cv-216 (D.N.D. 2020). The parties filed a stipulation for dismissal with prejudice on June 4, 2021. Id. Then on June 7, 2021, the bankruptcy court enjoined Hystad from taking any further action against Whiting with respect to any prepetition claims. See In re Whiting Petroleum Corp., No. 20-32021.

Hystad initiated this action on August 24, 2022. See Doc. No. 1. On September 23, 2022, Hystad filed its first amended complaint asserting two claims on behalf of itself and a class of similarly situated persons. See Doc. No. 10. In claim one Hystad seeks unpaid interest on untimely payments made by the Defendant to class members since August 12, 2016, pursuant to N.D.C.C. § 47-16-39.1. However, Hystad itself seeks damages related to Whiting's failure to pay interest on untimely payments after June 4, 2021, in light of the parties' previous stipulation in the 2020 case.

In claim two Hystad seeks a declaration that Whiting is required to pay Hystad and the class members interest on all future untimely payments.

On October 17, 2022, Whiting filed a motion to dismiss the Plaintiff's first amended complaint and strike class allegations. See Doc. No. 11. Whiting requests the Court strike the class allegations, dismiss the declaratory judgment claim, and dismiss the claim for statutory interest on untimely payments to the extent it asserts claims that have been discharged by prior bankruptcy orders, and to the extent it asserts claims that fall outside the statute of limitations.

On May 9, 2023, the Plaintiff filed a motion for leave to file a second amended class action complaint. See Doc. No. 17. The proposed second amended complaint removes claims against Whiting that arose prior to September 1, 2020. See Doc. No. 17-1. The Plaintiff filed the motion in response to Whiting's "Motion for Entry of an Order to Appear and Show Cause as to Why Hystad Ceynar Minerals, LLC is Not in Contempt of (1) the Agreed Order on Reorganized Debtors' Motion to Enforce Confirmation Order AND (2) the Confirmation Order" filed in Whiting's Bankruptcy case in Texas. See In re Whiting Petroleum Corp., No. 20-32021. The proposed second amended complaint does not change the date in which Hystad's alleged claims arose. Hystad itself still seeks recovery for untimely payments made since June 4, 2021. See Doc. No. 17-1.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "Subject matter jurisdiction defines the court's authority to hear a given type of case." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). Jurisdictional issues are a matter for the court to resolve prior to trial. Osborn v. United States, 918 F.2d 724, 729 (8th Cir.

1990). The Plaintiff bears the burden to prove subject matter jurisdiction exists. Herden v. United States, 726 F.3d 1042, 1046 (8th Cir. 2013).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." Osborn, 918 F.2d at 729 n.6. In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. (internal citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Id. (internal citation omitted). If a defendant wishes to make a factual attack on "the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute." Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

In this case, the parties dispute factual allegations relevant to the court's jurisdiction over the Plaintiff's declaratory judgment claim. Therefore, the Court will treat the motion as a factual attack. The Court may consider matters outside the pleadings to the extent necessary in ruling on the motion. See Buckler v. United States, 919 F.3d 1038, 1044 (8th Cir. 2019); Harris v. P.A.M. Transp., Inc., 339 F.3d 635, 637 n. 4 (8th Cir. 2003).

### III.   LEGAL DISCUSSION

Hystad brings this case on behalf of itself and class members pursuant to N.D.C.C. § 47-16-39.1 which governs the obligation of an operator arising under an oil and gas lease to pay royalties to a mineral owners and a mineral owner's assignees. N.D.C.C. § 47-16-39.1 provides:

> If the operator under an oil and gas lease fails to pay oil or gas royalties to the mineral owner or the mineral owner's assignee within one hundred fifty days after oil or gas produced under the lease is marketed and cancellation of the lease is not sought or if the operator fails to pay oil or gas royalties to an unleased mineral

> interest owner within one hundred fifty days after oil or gas production is marketed from the unleased mineral interest owner's mineral interest, the operator thereafter shall pay interest on the unpaid royalties, without the requirement that the mineral owner or the mineral owner's assignee request the payment of interest, at the rate of eighteen percent per annum until paid…This section does not apply if mineral owners or their assignees elect to take their proportionate share of production in kind, in the event of a dispute of title existing that would affect distribution of royalty payments, or if a mineral owner cannot be located after reasonable inquiry by the operator; however, the operator shall make royalty payments to those mineral owners whose title and ownership interest is not in dispute.

N.D.C.C. § 47-16-39.1(1).

### A.     Motion to Strike Class Allegations

Whiting contends the class allegations contained in the first amended complaint fail the typicality requirements of Rule 23 of the Federal Rule of Civil Procedure. Whiting argues class treatment is precluded in this case because the claims would require an individual examination of property interests of each proposed class member. Hystad contends the typicality requirements are met because Hystad and the class members have the same claim for relief.

Hystad brings this class action pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure. Rule 23(a) sets forth the prerequisites to a class action. It provides:

> (a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

A district court may grant a motion to strike class allegations prior to the filing of a motion for class certification when "it is apparent from the pleadings that the class cannot be certified because unsupportable class allegations bring impertinent material into the pleading and permitting such allegations to remain would prejudice the defendant by requiring the mounting of a defense against claims that ultimately cannot be sustained." Donelson v. Ameriprise Fin. Servs., Inc., 999 F.3d 1080 (8th Cir. 2021) (internal quotation marks omitted).

In *Nudell v. Burlington N. and Santa Fe Ry. Co.*, 2002 WL 1543725 (D.N.D. July 11, 2002), the court determined the proposed class and subclass lacked typicality when considering a motion for class certification. The court expressed concerns about the proposed class definitions:

> Most fundamentally, it is difficult to understand how the Court could determine whether a potential class member is in fact a class member without an individualized inquiry. To the contrary, the current class definition would require several factual determinations as to each potential class member. As a threshold matter, each claimant would have to establish that he or she owned land described in the definition … The essential questions here, as stated above, concern property rights. Specifically, the case would require resolution of several property-related issues: the extent of the railroads interest in the land at issue; the extent of each property owners interest; whether the defendants activities regarding laying of fiber optic cable exceeded the scope of the railroads interest vis-a-vis that of the class members; whether any legal defenses exist to bar the claim of each class member, such as consent, acquiescence, or the statute of limitations; and, finally, assuming the claims are legitimate and proven, whether and how much damages are due. The Court concludes that these decisions turn on so many individual questions that the claims of the named plaintiffs are not typical of the class.

Nudell, 2002 WL 1543725, at *1-5 (D.N.D. July 11, 2002).

Hystad's proposed class presents similar problems as the class and subclass in *Nudell*. While Hystad's proposed class concerns persons and entities owning mineral interests in wells, rather than railroad interests, individual questions as to each class member remain. Examining each proposed class member's claim would require verification of the ownership interests and a review of their lease with Whiting to determine whether the member holds the interest required to

6

fall within N.D.C.C. § 47-16-39.1. Further, N.D.C.C. § 47-16-39.1 contains safe harbor provisions which provide that penalty interest does not accrue under certain circumstances. Hystad's proposed class would require an inquiry into each member to determine whether any safe harbor provisions apply. Additionally, if claims are legitimate and proven, damages must be separately calculated for every class member. These necessary individualized determinations make Hystad's claims atypical of those of other class members. The Court finds that the proposed class does not meet the Rule 23(a)(3) typicality requirement.

Beyond the typicality requirement in Rule 23(a)(3), the proposed class cannot satisfy the predominance requirement of Rule 23(b)(3). Under Rule 23(b)(3) a class action may be maintained if Rule 23(a) is satisfied and if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In *Ebert v. General Mills*, 823 F.3d 472 (8th Cir. 2016) the Eighth Circuit Court of Appeals addressed the predominance requirement of Rule 23(b)(3). "The requirement of predominance under Rule 23(b)(3) is not satisfied if 'individual questions ... overwhelm the questions common to the class.'" Id. at 478-79 (citing to Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds, 568 U.S. 455 (2013)). "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." Id. at 479 (internal quotation marks omitted). "The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant

7

adjudication by representation and goes to the efficiency of a class action as an alternative to individual suits." Id. (citations omitted).

Here, the verification of leases and ownership interests and the determination of the existence of safe harbor provisions are individual questions that would require each member of the proposed class to present evidence. Hystad argues any issues can be promptly and conclusively determined through discovery. However, an individual inquiry into every class member would be time-consuming and inefficient. The individualized issues in this case predominate over the common claim for relief by the proposed class. The proposed class lacks the cohesion necessary to warrant class certification. Accordingly, the Court grants the Defendant's motion to strike the class allegations.

**B.     Motion to Dismiss Declaratory Judgment Claim**

Whiting argues the Court lacks jurisdiction over Hystad's declaratory judgment claim because Hystad fails to present a case or controversy. Hystad asserts its claim for declaratory relief is ripe because Whiting has consistently made late payments to Hystad without paying 18% interest and the probability of Whiting making future late payments without paying 18% interest is real and substantial.

The Declaratory Judgment Act authorizes federal courts to declare the rights of interested parties "[i]n a case of actual controversy." Diagnostic Unit Inmate Council v. Films Inc., 88 F.3d 651, 653 (8th Cir. 1996) (quoting 28 U.S.C. § 2201). The Declaratory Judgment Act does not provide a means for standing or relief. Mitchell v. Dakota Cty. Soc. Servs., 959 F.3d 887, 897 n. 2 (8th Cir. 2020) (citing Carson v. Pierce, 719 F.2d 931, 933 (8th Cir. 1983)).

The requirement of an "actual controversy" is imposed by Article III of the Constitution. Diagnostic Unit Inmate Council, 88 F.3d at 653. See also Steffel v. Thompson, 415 U.S. 452, 458

(1974). The Eighth Circuit has recognized that "in general, an actual controversy is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Diagnostic Unit Inmate Council, 88 F.3d at 653 (1996) (citations omitted). The plaintiff's claims must be ripe to seek declaratory judgment. Acuity, 2007 WL 1356919, at *5 (2007). The ripeness doctrine requires that "before a federal court may address itself to a question, there must exist a real substantial controversy between parties having adverse legal interests, a dispute definite and concrete, not hypothetical or abstract." Id. (quoting Nebraska Public Power District v. MidAmerican Energy Co., 234 F .3d 1032, 1038 (8th Cir.2000)). "Because the test to determine the existence of a substantial controversy is imprecise, the decision of whether such controversy exists is made upon the facts on a case by case basis." Modern Equip. Co., 146 F. Supp. 2d at 990 (internal citations omitted). A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all. Texas v. United States, 523 U.S. 296, 300 (1998) (internal quotation marks omitted).

Hystad's declaratory judgment claim lacks a definite and concrete dispute. The claim is predicated on future contingencies. Hystad's claim assumes: 1) Whiting will fail to pay future royalties within 150 days of production and marketing; 2) Whiting will not tender 18% interest when it pays the late royalties; and 3) no justification will exist for Whiting's failure to pay, such as the statutory safe harbor provisions. Hystad's claim rests upon these future contingencies that may not occur as anticipated or at all which makes the claim hypothetical rather than concrete.

Hystad argues the declaratory judgment claim is viable because it requests the Court determine whether Whiting is statutorily required to pay 18% interest when it makes future late payments, which is a purely legal issue. However, whether Hystad is entitled to 18% interest

necessitates a factual inquiry into whether any circumstances occurred that make the safe harbor provision of the statute applicable. Accordingly, Hystad's declaratory judgment claim fails to present an actual controversy and is not ripe for adjudication. Dismissal of Hystad's declaratory judgment claim is warranted.

### C.    Motion to Dismiss Claim for Statutory Interest

#### 1.    Bankruptcy Orders

Whiting argues the confirmation order in the bankruptcy proceedings discharged all prepetition claims for penalty statutory interest against Whiting which includes the putative class's claim. Finding the class allegations must be stricken, the Court need not address whether the class's claim for statutory interest was discharged by prior bankruptcy orders.

#### 2.    Statute of Limitations

Whiting argues the putative class's claim for 18% statutory interest on untimely payments falls outside the applicable statute of limitations period. The first amended complaint asserts the applicable statute of limitations for claims under N.D.C.C. § 47-16-39.1 is six years. Whiting argues a three-year statute of limitations applies to the proposed class's claim.

Hystad initiated this action on August 24, 2022. The first amended complaint asserts claims for class members that date back to August 12, 2016, while Hystad's claims only date back to June 4, 2021. Whiting's argument regarding the statute of limitations only pertains to the class's claim. Hystad's claim for statutory interest arose approximately fourteen months prior to the initiation of this action. Thus, Hystad's claim is not barred by either the three-year or six-year statute of limitations. The Court need not address which statute of limitations period applies to the class's claim because the class allegations have been struck. Hystad's claim for statutory interest may proceed.

**D.    Motion for Leave to File Second Amended Class Action Complaint**

Rule 15(a)(2) provides that the Court may permit a party to amend the pleadings when justice so requires. It is generally left to the court's discretion whether to grant leave to file an amended pleading. Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd., 32 F.3d 1244, 1255 (8th Cir. 1994); Williams v. Little Rock Mun. Water Works, 21 F.3d 218, 224 (8th Cir. 1994); Brown v. Wallace, 957 F.2d 564, 566 (8th Cir. 1992). "Unless there is a good reason for denial, 'such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment, leave to amend should be granted.'" Becker v. Univ. of Neb. at Omaha, 191 F.3d 904, 907-08 (8th Cir. 1999) (original citation omitted). Fed. R. Civ. P. 15(a).

> Rule 15(a) of the Federal Rules of Civil Procedure provides as follows:
> **(a)  Amendments Before Trial.**
>
> **(1)** *Amending as a Matter of Course*.  A party may amend its pleading once as a matter of course within:
>
> **(A)** 21 days after serving it, or
>
> **(B)** if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.
>
> **(2)** *Other Amendments*.  In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires.

Fed. R. Civ. P. 15(a).

Unless there is a good reason for denial, such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment, leave to amend is generally granted. Becker v. Univ. of Nebraska at Omaha, 191 F.3d 904, 908 (8th Cir. 1999); Brown v. Wallace, 957 F.2d 564,

566. "Likelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous." Becker v. Univ. of Nebraska at Omaha, 191 F.3d 904, 908.

Hystad seeks to amend its complaint to shorten the time-period in which it seeks to recover statutory interest on untimely payments. Hystad seeks statutory interest on untimely payments made to class members since August 12, 2016, in the first amended complaint, whereas Hystad seeks statutory interest on untimely payments made to class members since September 1, 2020, in the proposed second amended complaint. Hystad itself seeks statutory interest on untimely payments since June 4, 2021, in both the first amended complaint and the proposed second amended complaint.

The proposed amendments address only the class members. Specifically, shortening the time period in which Hystad seeks recovery for the proposed class removes alleged claims that have potentially been discharged by bankruptcy proceedings. However, the date the class's claim arose does not matter because the class allegations must be struck. Thus, Hystad's proposed amendments would be futile. Accordingly, the Plaintiff's motion for leave to file a second amended complaint is denied.

## IV.   CONCLUSION

The Court has carefully reviewed the entire record, the parties' briefs, and the relevant case law. For the reasons set forth above, the Defendant's motion to strike class allegations (Doc. No. 11) is **GRANTED.** The Defendant's motion to dismiss the Plaintiff's declaratory judgment claim (Doc. No. 11) is **GRANTED**. The Plaintiff's claim for Whiting's violations of N.D.C.C. § 47-16-

39.1 since June 4, 2021, will go forward only as to Hystad. The Plaintiff's Motion for Leave to File Second Amended Class Action Complaint (Doc. No. 17) is **DENIED**.

    **IT IS SO ORDERED.**

Dated this 15th day of May, 2023.

                                                        */s/ Daniel L. Hovland*
                                                        Daniel L. Hovland, District Judge
                                                        United States District Court